## F. B. PRATT vs. CANTON COTTON COMPANY.

1. CONTRACTS: *Construction thereof.*

    It is legitimate for the court to look to the circumstances attending the contracting parties, as well as the terms of the contract itself, to learn the purposes and objects contemplated, as aids to a correct understanding of a particular part supposed to be equivocal and doubtful.

2. SUBSCRIPTIONS: *Release thereof.*

    It is well settled that where subscriptions to public improvements are made with reference to their location, any subsequent material change of location, without the consent of the subscriber, releases the subscription, as the location as made, or agreed to be made, may have been the consideration of the subscription.

3. Same: *Case in judgment.*

　The stockholders and parties in interest having construed the 5th article as directing the office and place of business to be located in Canton, and not as referring to the manufacturing site and buildings; and this construction being warranted by the language used, should be adopted by the courts.

Error to the Circuit Court of *Madison* County.

Hon. W. B. Cunningham, Judge.

This was an action by the Canton Cotton Company against F. B. Pratt, to recover the amount of his subscription to the organization of said company. Issues were joined and the case was submitted to a jury. The case turns entirely on the evidence and instructions. The articles of subscription show an agreement to form a company for carrying on and operating a general cotton mill business, specifying details under the letters " A, B, C, D," as to purchasing and improving real estate, and erecting buildings, etc., procuring machinery, buying raw materials, and employing operatives.

Clause 5 of said article is as follows, viz: " 5. That the office and place of carrying on and transacting the affairs of said company shall be located in the town of Canton, county of Madison and state of Mississippi." Pratt refuses to pay because the cotton factory was located, not in Canton, for which he subscribed, but two miles out of Canton.

The evidence shows that all the real estate bought or leased by the company, all machinery and buildings erected and work done, all operations carried on, were outside of the town of Canton, but the meetings of the directors, and the transactions of all business pertaining to the affairs of the company were had in the town of Canton.

The substance of the instructions given by the court was, to " find for the plaintiff (below) if the meetings of the directors of the cotton company were always held in Canton, although the land, buildings, machinery, and all operations of the company were located outside of the town of Canton."

The defendant (below) asked the court to instruct, "that having subscribed to a cotton factory, to be located in Canton, he was discharged from his subscription if it was located outside of Canton, even though meetings or the governing body were uniformly held in Canton." This was refused, and a verdict was rendered for the plaintiff.

The errors assigned are, the granting instructions for plaintiff, and refusing that for defendant.

*J. A. P. Campbell*, for plaintiff in error:

This case must turn entirely on the construction of the 5th clause of the charter. Those who subscribed on condition as to location, as all did, were discharged by a disregard of the condition, unless they consented to a change; and it is not claimed that Mr. Pratt did so consent. Hester *v.* M. & C. R. R. Co., 32 Miss., 378; Roberts *v.* M. & O. R. R. Co., 32 id., 373; Champion *v.* M. & C. R. R. Co., 35 id., 692. A reference to the subsequently granted charter (acts of 1870, p. 189) will show that Canton was to be the locality of the "factory," unless upon terms designated it should be changed. They who subscribe to a chartered company consent to its prescribed powers, but they who subscribe to articles preliminary are not bound by a subsequent charter which varies the terms, if under the charter, power is exercised at variance with the preliminary articles. Hester *v.* M. & C. R. R. Co., 32 Miss., 378, above cited. The term "office" denotes a place of business.

*O. R. Singleton, B. J. Semmes* and *J. W. Downs*, for defendant in error:

The question raised by the pleadings involves the construction of the 5th article of the terms of the association. The only error assigned is the instruction of the court to the jury, in the 5th article, in the language following: "That the office and place of carrying on and transacting the affairs of said company shall be located in the town of Canton." Plaintiff in error subscribed the articles before the company was incorporated. We presume from the articles of association that, at the time, it was not known

to either contracting party at what place the buildings would be erected or located, with its other buildings and improvements, and cottages for operatives, etc. There is nothing indicated on this subject until the act of incorporation in which it is provided that those buildings shall be located within two miles of Canton, all of which has been done, as shown by the evidence.

SIMRALL, J., delivered the opinion of the court.

The plaintiff in error was sued for his subscription of two shares, $100 each, to the capital stock of the Canton Cotton Co. He makes the defense that his subscription was upon conditions, one of which has not been complied with. The subscribers for stock attached their names, with the number of shares proposed to be taken, to articles setting forth specifically the objects and purposes of the scheme. The general object was to form, under "the statutes of the state, a company and corporation for the purpose of carrying on and operating a general cotton mill business."

. The 5th clause of the article is as follows: " That the office and place of carrying on and transacting the affairs of said company shall be in the town of Canton," etc. The proof was that the purchase of all the real estate, erection of buildings and machinery, and the operation thereof of the production of goods, was outside of the corporate limits of Canton, two miles from the court house. The corporate capital, so far as it had been used, had been expended outside of the city. It was also in proof that all the meetings of the trustees who, under the articles, managed, directed, and controlled the business, were held, and ever had been since the organization of the company, in the town of Canton, at the law office of its president.

The point about which the parties contested in the circuit court was, whether, as claimed by the plaintiff and ruled by the court, the fifth clause of the articles of subscription was complied with by the meetings of the trustees, and the transaction of the business, as above stated, in the town of Canton, or whether, as insisted by the defendant, the stipulation meant that the manufacturing estab-

lishment, with its buildings, machinery and appliances, should be located and operated within the limits of the town.

The circuit court instructed the jury adverse to the defendant, and in favor of the plaintiff's view of the law, which is the true construction of the articles.  It is legitimate for the court to look to the subject matter, and the circumstances attending the contracting parties, as well as the terms of the contract itself, to learn the purposes and objects contemplated as aids to a correct understanding of a particular part supposed to be equivocal and doubtful.  The articles of association declare the object to, be the formation, under the statutes of the state, of a company and corporation to carry on and operate a general cotton mill business, the procuring of the ground, and erecting the buildings and machinery thereon.  The corporate name is stated, the amount of capital stock, and the number of shares and amount of each, and the installments from time to time to be called in.  The business to be managed by the board of trustees, to be elected by the stockholders.  Pratt insists, that by the fifth article of association, the company were obliged to locate the cotton mill within the corporate limits of Canton, which he claims to be a condition of subscription for stock, and not having done so, he is released.  The principle recognized in Hester v. Memphis & Charleston R. R. Co., 32 Miss., 380–1, and abundantly sustained by authority, is that if a subscription to the stock of a railroad company is made with reference to the location of the road already or agreed to be made, a subsequent material change of the route, without the consent of the subscriber, absolves him from obligation.  Such material alteration introduces new terms, to which he never assented, and the location as made, or as agreed to be made, may have been a motive and consideration of the subscription.  It was proved that at the first meeting of the stockholders after the organization, the location for the mill was made by a vote of the stockholders, at the place deemed most suitable for this sort of a factory.  Whether Pratt was present, consenting to the location, does not appear. The conduct and acts of the stockholders and directors have

placed an interpretation upon the fifth article utterly inconsistent with that put by the plaintiff in error—they have read it—as directing the office and place for managing the business by those who consult and direct its general affairs, to be located in Canton, and not at all referring to the manufacturing site and buildings. Such was the concurrent opinion of the stockholders and trustees as to its meaning.   The president of the managing board, from the beginning, is a lawyer, and gentleman of intelligence and distinction, and gave full testimony at the trial on this point.   It would be a matter of surprise if the stockholders and trustees have continuously misconstrued a fundamental article of the association, unless the words are ambiguous, and of most doubtful meaning.   If vague and uncertain, the immediate parties concerned have themselves put a meaning upon them, have by their votes and acts expressed the sense in which they understand them, and that sense ought to be accepted and adopted by the courts, unless plainly forbidden by the words themselves.   The meaning and object of the 5th article, as understood, construed and acted upon by the stockholders and trustees, is consistent with the language used.   The office and place of business has been kept in Canton.   It may have been wiser and better to put the mill outside, rather than within the corporate limits of the town.

There is no error.   Let the judgment be affirmed.